**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAARON SHEARS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:16-cv-01427** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **JOHN CARTER, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

On July 12, 2016, Plaintiff Daaron Shears, an inmate currently confined at the Greene

State Correctional Institution in Waynesburg, Pennsylvania ("SCI-Greene"), filed a complaint

pursuant to 42 U.S.C. § 1983 against two correctional officers and a registered nurse employed at

SCI-Frackville stemming from a May 3, 2016 incident. (Doc. No. 1.) Plaintiff claims that the

correctional officers Carter and Chehovich sexually assaulted/harassed him during a pat-down

search and used excessive force when placing him in his cell. Plaintiff also asserts Defendant

Chehovich failed to intervene to stop Defendant Carter from assaulting him. (<u>Id.</u>) Plaintiff also

claims that the registered nurse, Kathleen Shorts ("Shorts"), was deliberately indifferent to his

serious medical need when she failed to take any action when he reported the sexual assault to

her. (<u>Id.</u>)

Upon the conclusion of the discovery period, Defendants filed a motion for summary

judgment (Doc. No. 42), statement of material facts (Doc. No. 43), and brief in support of their

motion for summary judgment (Doc. No. 44). Plaintiff has filed a brief in opposition to

Defendants' motion for summary judgment (Doc. No. 45), response to the statement of facts

(Doc. No. 46), and a memorandum of law in opposition to Defendants' motion for summary

judgment (Doc. No. 47). Defendants have filed a reply brief. (Doc. No. 49.) Having been fully

briefed, this matter is now ripe for disposition. For the reasons set forth below, Defendants' motion will be granted.

## I. BACKGROUND

### A. Statement of Undisputed Facts[1]

#### i. Facts Surrounding the May 3, 2016 Incident

The allegations of the complaint stem from an incident while Plaintiff was housed at SCI-Frackville. (Doc. No. 43 ¶ 1.) Defendants Carter and Chehovich are correctional officers formerly employed at SCI-Frackville. (Id. ¶¶ 2, 3.) Defendant Shorts is a registered nurse formerly employed at SCI-Frackville. (Id. ¶ 4.) On May 3, 2016, Plaintiff was subjected to a strip search and pat down search, performed by Defendant Carter, as he exited the law library. (Id. ¶¶ 5, 6.) At approximately 2237 hours on May 3, 2016, Plaintiff requested to see the medical department. (Id. ¶ 7.) Plaintiff was evaluated by Defendant Shorts at approximately

---

[1] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. LR 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (See Doc. No. 43.) While Plaintiff filed a response to Defendants' statement of material facts, conceding to a number of the facts, Plaintiff provides no reference to the record to support those facts he opposes. (See Doc. No. 46.) The Court accordingly deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa., Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1 . . . by failing to cite to specific portions of the record in support of his responsive concise statement of facts."); Bronson v. White, No. 1:05-CV-2150, 2007 WL 3033865, at *1 n.1 (M.D. Pa. Oct. 15, 2007) ("Although Plaintiff has denied certain paragraphs of the Defendants' Statement of Material Undisputed Facts, he has not pointed to record evidence to support such denials. Therefore, pursuant to Local Rule 56.1, those material facts are deemed to be admitted.").

2237 hours.  (Id. ¶ 8.)  During this evaluation by Defendant Shorts, Plaintiff did not mention any alleged sexual assault by Defendant Carter, but rather, complained that he was unable to sleep. (Id. ¶¶ 9, 10.)  In response to Plaintiff's complaint, Defendant Shorts made referrals to psychiatry and psychology, contacted the psychiatrist, and gave Plaintiff a single dose of Benadryl.  (Id. ¶ 11.)

Plaintiff was next seen by Nurse Holli Nigh ("Ms. Nigh"), the following morning, May 4, 2016, at 0810 hours (Id. ¶ 12), and then by a psychologist at 0820 hours (Id. ¶ 14).  Plaintiff did not mention the alleged incident involving Defendant Carter at either of those visits.  (Id. ¶¶ 13, 16.)  It was not until 1400 hours on May 4, 2016 that Plaintiff stated to Nurse Nigh that "last night, they grabbed my nuts . . . see it's swollen . . . I have a bruise on my arm too."  (Id. ¶ 18.) Nurse Nigh performed a visual inspection of Plaintiff's testicles and noted no edema/swelling, bruising, redness or open areas and further observed that Plaintiff did not exhibit any signs or symptoms of discomfort.  (Id. ¶¶ 19, 20.)  Nurse Nigh also examined Plaintiff's right bicep and noted a small nickel size ecchymotic area that was red and dark blue in color.  (Id. ¶ 21.)  Nurse Nigh noted that Plaintiff had full range of motion in his arm and was able to pull his shorts up and down without incident.  (Id. ¶ 22.)  Following the examination, Nurse Nigh notified other nurses, the corrections health care administrator, certified registered nurse practitioner, and the on-call physician of Plaintiff's report.  (Id. ¶ 23.)

Plaintiff was then seen by Dr. Pandya that same day at 1525 hours.  (Id. ¶ 24.)  Plaintiff reported to Dr. Pandya that "yesterday after I exited the law library C.O. pat searched me and grabbed my testicle.  Then he grabbed me by my right arm with force and threw me in cell.  Now I have a bruise on [right] inner midarm and [right] testicle pain."  (Id. ¶ 25.)  Dr. Pandya noted that Plaintiff has a "past history of bruising relatively easy" and suffered an injury to his right

testicle from a bicycle accident years ago.  (Id. ¶ 26.)  "On examination, Dr. Pandya noted the right inner midarm ha[d] an oval area with several dark spots" but "no significant swelling was appreciated" and that his right testicle "was slightly larger than [his] left but otherwise normal." (Id. ¶¶ 27, 28.)

Plaintiff was next seen by a psychologist on May 5, 2016, and Plaintiff's assaultive behavior was discussed.  (Id. ¶ 30.)  The psychologist noted that Plaintiff does not like Defendant Carter and that Plaintiff has to be escorted with a spit hood.  (Id. ¶¶ 29, 31.)  Plaintiff did not mention the alleged assault.  (Id. ¶ 32.)  Plaintiff was seen again by Dr. Pandya on May 6, 2016 and other nurses between May 6, 2016 and May 13, 2016.  (Id. ¶ 33.)  Plaintiff did not complain about his arm or testicle during these encounters.  (Id. ¶ 34.)

On May 14, 2016, Plaintiff was again seen by nursing staff and stated, for the first time, "I want sick call in the AM, I'm pissing blood for the past hour."  (Id. ¶¶ 37, 41.)  A urinalysis via dipstick was obtained.  (Id. ¶ 39.)  Plaintiff was seen by the nurse practitioner on May 15, 2016, where Plaintiff reported that his testicle was sore and that he was urinating blood.  (Id. ¶ 42.)  The urine dip revealed a small amount of blood and trace protein, for which Plaintiff was prescribed Cipro and Tylenol for a urinary tract infection ("UTI").  (Id. ¶¶ 44, 45.)

Dr. Pandya saw Plaintiff on May 17, 2016.  (Id. ¶ 46.)  Plaintiff complained that he was bleeding because the C.O. pulled his testicle and that he did not have a UTI.  (Id.)  Dr. Pandya noted that Plaintiff was taking his Cipro medication regularly and that the blood in his urine was small to minimal.  (Id. ¶ 47.)  Dr. Pandya increased Plaintiff's Cipro duration to ten days.  (Id. ¶ 48.)  When Dr. Pandya saw Plaintiff on May 19, 2016, Plaintiff stated that he "just peed before coming.  It is not swollen anymore [right testicle] and doesn't hurt."  (Id. ¶ 49.)  Dr. Pandya assessed Plaintiff, and noted that the epididymitis was mild, now improved, and that Plaintiff

was to continue Cipro. (Id. ¶ 51.) However, Plaintiff refused to take his Cipro on May 19, 21, and 22, explaining to the nursing staff that he did not need it because he did not have a UTI. (Id. ¶ 52.)

On May 24, 2016, nursing staff were called to Plaintiff's cell because he inserted a pen into his penis. (Id. ¶ 53.) Plaintiff was seen by members of the medical staff on May 26, 27, 29, 31, and June 1. (Id. ¶ 55.) On June 3, 2016, Dr. Pandya examined Plaintiff and Plaintiff asked Dr. Pandya why he was spreading rumors that Plaintiff had a UTI when he knew he was urinating blood because a correctional officer assaulted him. (Id. ¶ 56.) Dr. Pandya advised Plaintiff that his urine was bloody secondary to Plaintiff causing trauma to his urethra by inserting objects into his penis. (Id. ¶ 57.)

### ii. Misconducts and Grievances Leading up to May 3, 2016 Incident

Defendant Carter issued Plaintiff a misconduct on January 7, 2016 for making threats to him, to which Plaintiff pled guilty. (Id. ¶¶ 65, 66.) Plaintiff was issued another misconduct on February 22, 2016 by Defendant Carter for Plaintiff's threats and attempt to spit on Defendant Carter. (Id. ¶ 67.) Plaintiff was found guilty of this misconduct. (Id. ¶ 69.) Then, on March 4, 2016, Defendant Chehovich issued Plaintiff a misconduct for stating "if I come out I'm spitting on Carter. He thinks he's a warrior, I'll show him a warrior." (Id. ¶ 70.) Plaintiff was found guilty of this misconduct. (Id. ¶ 72.)

On March 27, 2016, Plaintiff filed a grievance against Defendants Carter and Chehovich alleging that they allowed another inmate to assault him. (Id. ¶ 73.) This grievance was determined to be unfounded and frivolous. (Id. ¶ 75.) On March 29, 2016, Defendant Chehovich issued a misconduct to Plaintiff for covering the cameras in his cell, refusing to remove the paper blocking the cameras, and making threats against him. (Id. ¶ 76.) Plaintiff

admitted covering the cameras but denied making the threats. (Id. ¶ 77.) Plaintiff was found guilty of the misconduct. (Id. ¶ 78.)

Defendant Carter issued Plaintiff another misconduct on April 24, 2016 when Plaintiff told Defendant Carter he would kill him. (Id. ¶ 79.) While Plaintiff denied recollection of the incident, he was found guilty of the misconduct. (Id. ¶¶ 80, 81.) Plaintiff filed a grievance on May 2, 2016, requesting to be removed from the behavioral management unit and admitting that he had previously spit on Defendant Carter. (Id. ¶¶ 82, 83.) Plaintiff's grievance requesting to be removed from the behavior management unit was denied. (Id. ¶ 84.) On May 3, 2016, Defendant Carter issued Plaintiff a misconduct for Plaintiff becoming aggressive and turning around and spitting on Defendant Carter during an escort back to Plaintiff's cell. (Id. ¶ 85.) While Plaintiff pled not guilty, he admitted to having an ongoing problem with Defendant Carter. (Id. ¶ 86.) Plaintiff was found guilty of this misconduct. (Id. ¶ 87.)

On May 3, 2016, Plaintiff filed a grievance alleging that Defendant Carter twisted his right testicle and caused him pain, that Defendant Chehovich forcefully pushed Plaintiff into his cell, and that Defendant Shorts failed to acknowledge his medical complaint. (Id. ¶ 91.) Plaintiff's grievance was rejected on the basis that Plaintiff failed to comply with the Prison Rape Elimination Act ("PREA"), which requires allegations of sexual abuse to be grieved through the Department and the PREA Compliance Manager, rather than through the inmate grievance system. (Id. ¶¶ 93, 94.) Plaintiff's grievance was then forwarded to the Security Department and the PREA Compliance Manager to start an investigation. (Id. ¶ 94.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party.  Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce

evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III.    DISCUSSION

Plaintiff is suing Defendants in both their individual and official capacities. His claims against the Correctional Defendants include Eighth Amendment violations for sexual assault/harassment constituting cruel and unusual punishment, excessive force, and failure to

intervene.  Plaintiff has also alleged an Eighth Amendment violation against Nurse Shorts for deliberate indifference to a serious medical need.  In addition to compensatory and punitive damages, Plaintiff seeks declaratory and injunctive relief.[2]

A. **Plaintiff's Official Capacity Claims are Barred by Eleventh Amendment Immunity**

The Court agrees with Defendants' position that Plaintiff's claims against them for compensatory and punitive damages in their official capacities should be denied.  A state official sued in his or her official capacity is not a "person" for purposes of § 1983 when a plaintiff seeks monetary damages because the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 63-71 (1989).  Will clearly precludes actions for damages against state officials acting in their official capacities.  However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities.  Ex parte Young, 209 U.S. 123 (1908); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002).  Consequently, the Court will grant Defendants' motion for summary judgement as to Plaintiff's claims for compensatory and punitive damages brought against Defendants in their official capacities under § 1983. Additionally, given that Plaintiff has withdrawn his claims for injunctive and declaratory relief, the Court also grants summary judgment in favor of Defendants and against Plaintiff as to these claims.

---

[2] In Plaintiff's brief in opposition, Plaintiff concedes that Defendants are entitled to summary judgment on his failure to intervene claim (Doc. No. 47 at 11), and that Plaintiff is not entitled to declaratory or injunctive relief (Id.).  Accordingly, the Court need not address the merits of these particular claims and will grant summary judgment in favor of Defendants and against Plaintiff as to Plaintiff's failure to intervene claim, as well as his request for declaratory and injunctive relief.

**B.      Defendants Are Entitled to Entry of Summary Judgment on Plaintiff's Eighth Amendment Claims**

Plaintiff's complaint sets forth claims under the Eighth Amendment including sexual assault/harassment constituting cruel and unusual punishment, deliberate indifference to a serious medical need, and excessive force.[3]  (Doc. No. 1 at 3-4.)  Defendants contend that the allegations set forth by Plaintiff are insufficient to support his claims.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  In Estelle v. Gamble, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted) ("To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety.").

There are several types of Eighth Amendment claims, including claims of: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards.  An Eighth Amendment claim includes both objective and subjective components.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  Id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  Id.

_____

[3] As noted above, Plaintiff has withdrawn his failure to intervene claim.  (Doc. No. 47 at 11.)

### i. Sexual Assault/Harassment

Defendants seek summary judgment on the ground that the isolated incident in which Defendant Carter allegedly grabbed Plaintiff's testicle is insufficient to establish an Eighth Amendment violation. To survive summary judgment, Plaintiff must produce sufficient evidence establishing that: (1) he was incarcerated under conditions posing a substantial risk of serious harm (an objective inquiry), which "'may be established by much less than proof of a reign of violence and terror,' but requires more than a single incident or isolated incidents"; (2) the prison official acted with deliberate indifference to a substantial risk to Plaintiff's health and safety (a subjective inquiry); and (3) the prison official's deliberate indifference caused Plaintiff harm. Bristrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (citing Farmer, 511 U.S. at 834).

Punishment is cruel and unusual under the Eighth Amendment when it inflicts unnecessary and wanton pain, and it includes punishment lacking any penological justification. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Banks v. Rozum, 639 F. App'x 778, 782 (3d Cir. 2016) (quoting Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015)). However, where the search does not extend beyond the scope needed to support a legitimate penological purpose of prison security, there is no constitutional violation. Id.; see also Banks v. Rozum, Civ. No. 14-27J, 2015 WL 1186224, at *12 (W.D. Pa. March 13, 2015) (citing Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) ("[R]outine pat-down searches, which include the groin area, and which are otherwise justified by security needs, do not violate the [F]ourteenth [A]mendment . . . .")), aff'd, 639 F. App'x 778 (3d Cir. 2016). As one court has explained:

> [a]ny manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of the search. Although "grabbing" and "tugging" could cause some discomfort and embarrassment, it does not rise to the level of "unnecessary and wanton infliction of [pain]" so long as it occurs as part of an otherwise justified search.

Banks, 2015 WL 1186224, at *13 (alternations in original) (quoting Cherry v. Frank, Civ. No. 03-129, 2003 WL 23205817, at *12 (W.D. Wis. Dec. 4, 2003)); see also Wolfe v. Beard, Civ. No. 10-2566, 2013 WL 2370572, at *12 (E.D. Pa. May 31, 2013) (citing Hughes v. Smith, 237 F. App'x 756, 759 (3d Cir. 2007); Kiser v. Kramer, Civ. No. 10-609, 2010 WL 4513421, at *3 (D. Del. Nov. 2, 2010)) (concluding that "[t]he [c]ourt's legal conclusion that [defendant's] search did not violate the Eighth Amendment is bolstered by the fact that other courts within this circuit have determined that a frisking officer's contact with an inmate's genitals or private areas during a single pat-down search is insufficient to constitute an Eighth Amendment violation"); Harris v. Zappan, No. 97-4957, 1999 WL 391490, at *1, 3 (E.D. Pa. May 29, 1999) (reasoning that sexually explicit comments, fondling, and rubbing prisoner's thigh and breasts did not rise to the level of an Eighth Amendment violation); see also Sharpe v. Costello, Civ. No. 06-1493, 2007 WL 1098964, at *4 (M.D. Pa. Apr. 11, 2007) (describing applicable case law).

To constitute an Eighth Amendment claim, the incidents complained of must be "sufficiently serious" or "cumulatively egregious in the harm they inflicted." Chavis v. U.S., 597 F. App'x 38, 41 (3d Cir. 2014) (quoting Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997)). "[I]solated episodes of harassment and touching . . . are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." Boddie, 105 F.3d at 861; Chavis, 597 F. App'x at 41; see also Williams v. Silverman, Civ. No. 12-0974, 2013 WL 6578980, at *4 (E.D. Pa. Dec. 16, 2013) (dismissing with prejudice claim alleging one instance of inappropriate

touching during pat-down search); <u>Hughes</u>, 237 F. App'x at 759 (affirming dismissal of Eighth Amendment claim alleging officer touched plaintiff's testicles through his clothing during single pat-down frisk).

"Instead, only severe or repetitive sexual abuse has been found to rise to the level of an Eighth Amendment violation." <u>Banks</u>, 2015 WL 1186224, at *14. <u>Compare</u> <u>United States v. Walsh</u>, 194 F.3d 37 (2d Cir. 1999) (stating that corrections officer who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment), <u>with</u> <u>Hughes v. Smith</u>, 237 F. App'x 756, 759 (3d Cir. 2007) (affirming dismissal of Eighth Amendment claim alleging an officer touched plaintiff's testicles through his clothing during a single pat-down frisk), <u>Banks</u>, 639 F. App'x at 782 (affirming dismissal of Eighth Amendment claim for failure to state a constitutional violation where inmate alleged a correctional officer roughly groped prisoner's groin through his pants with an aggressive tight squeeze on two occasions), <u>Bradley v. United States</u>, 299 F.3d 197 (3d Cir. 2002) (upholding pat-down search by female customs inspector of female passenger at customs checkpoint where passenger alleged that inspector inappropriately touched her genitals through her dress), <u>Chavis</u>, 597 F. App'x at 41 (affirming district court's dismissal of Eighth Amendment claim where officer allegedly groped prisoner's testicles and brushed his penis while performing a pat-down search because the isolated incident did not rise to the level of an Eighth Amendment violation), <u>and</u> <u>Watson v. Beard</u>, Civ. No. 09-087J, 2013 WL 4648323, *9-10 (W.D. Pa. Aug. 28, 2013) (upholding pat-down search through clothing that included the groin area), <u>aff'd on other grounds</u>, 448 F. App'x 141 (3d Cir. 2014).

In the instant action, Plaintiff challenges a single pat-down search during which Defendant Carter allegedly squeezed his right testicle. This single isolated episode is not

sufficiently serious to satisfy the objective element of the applicable standard as to an Eighth Amendment violation. Moreover, Plaintiff has failed to raise "more than a mere scintilla of evidence in [his] favor" in order to overcome Defendants' summary judgment motion and cannot survive summary judgment by relying on unsupported assertions or conclusory allegations. See Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Accordingly, Defendants are entitled to an entry of summary judgment.

### ii.    Deliberate Indifference to a Serious Medical Need

Plaintiff next claims that Nurse Shorts was deliberately indifferent to his serious medical need for failing to treat him on May 3, 2016 for the alleged sexual assault by Defendant Carter. Defendants counter that there is no evidence to support this allegation, and indeed, the medical records indicate that Plaintiff never informed Nurse Shorts of any allegation of sexual assault on the night of May 3, 2016. (Doc. No. 43 ¶¶ 7-9.) In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element). Farmer, 511 U.S. at 838-39; Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). Because only egregious acts or omissions can violate this standard, mere medical malpractice will not result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d

Cir. 1990); see also Estelle, 429 U.S. at 106 (stating that a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

The "deliberate indifference" prong requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: knows of a prisoner's need for medical treatment and intentionally refuses to provide it; delays necessary medical treatment for a non-medical reason; or prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F.Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981). Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming Cnty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The relevant question is whether the defendant has provided the

plaintiff with some type of treatment, regardless of whether the treatment is what the plaintiff desires.  <u>Carlson</u>, 685 F. Supp. at 1339.

The objective component of an Eighth Amendment claim, <u>i.e.</u>, whether a plaintiff's medical needs were serious, is rooted in contemporary standards of decency.  <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  <u>Lanzaro</u>, 834 F.2d at 347 (citing <u>Pace v. Fauver</u>, 479 F. Supp. 456, 458 (D.N.J. 1979), <u>aff'd</u>, 649 F.2d 860 (3d Cir. 1981)).  A serious medical need contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.  <u>See Lanzaro</u>, 834 F.2d at 347; <u>Archer v. Dutcher</u>, 733 F.2d 14, 16-17 (2d Cir. 1984); <u>Todaro v. Ward</u>, 565 F.2d 48, 52 (2d Cir. 1977).  The Third Circuit has held that not every injury or illness enjoys constitutional protection; only serious medical problems are actionable.  <u>See Keve</u>, 571 F.2d at 161.  In addition, courts have indicated that minor abrasions, even those involving associated bleeding, do not rise to the level of an objectively serious medical need.  <u>See Wisneski v. Denning</u>, Civ. No. 12-864, 2014 WL 1758118, at *22 (W.D. Pa. Apr. 30, 2014).

In light of the undisputed facts and the record before the Court, the Court finds that Plaintiff has failed to overcome Defendants' summary judgment motion and cannot survive summary judgment by merely relying on unsupported assertions or conclusory allegations in his complaint.  On the evening of May 3, 2016, Nurse Shorts encountered Plaintiff due to his complaints of not being able to sleep.  (Doc. No. 43 ¶¶ 7-9.)  Nurse Shorts evaluated Plaintiff for these claims, making referrals to psychiatry and psychology, contacting the psychiatrist, and providing Plaintiff with a single dose of Benadryl.  (<u>Id.</u> ¶ 11.)  Plaintiff has failed to point to any

evidence of record to support his assertions and conclusory allegations that he told Nurse Shorts on May 3, 2016 that he was assaulted. Defendants have, however, come forth with records supporting their contention that it was not until the following day, i.e., May 4, 2016, that Plaintiff first claimed he was assaulted by a staff member (Doc. No. 43 ¶ 17), and it was not until May 14, 2016, that Plaintiff complained of urinating blood (Id. ¶¶ 37, 41). On each occasion, Plaintiff was evaluated by medical staff, including nurses, a nurse practitioner, and Dr. Pandya. (Id. ¶¶ 18-24, 37, 41-49.) The staff performed various tests and Plaintiff was prescribed Cipro and Tylenol for a UTI. (Id. ¶¶ 39, 45, 48.)

As explained above, Defendants have satisfied their burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact. Plaintiff was required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp., 477 U.S. at 324. However, Plaintiff has failed to do so. Because Plaintiff has not come forth with any credible evidence indicating that Nurse Shorts violated his Eighth Amendment right, Defendant Short is entitled to an entry of summary judgment as to this claim.

### iii.     Excessive Force

Defendants seek summary judgment on Plaintiff's excessive force claim on the grounds that de minimis force was used and justified in order to subdue Plaintiff, who was hostile and non-compliant while returning to his cell on May 3, 2016. The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The standard for whether one has an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm." <u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)).

The issue of whether excessive force was used is one that, in proper circumstances, can be determined as a matter of law.  In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." <u>Brooks</u>, 204 F.3d at 106 (quoting <u>Whitley</u>, 475 U.S. at 322).  In making this determination, courts are tasked with evaluating the following <u>Whitley</u> factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

<u>Id.</u>  The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

<u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992)).

When considering such claims, the reasonableness of a particular use of force is often dependent upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham v. Connor</u>, 490 U.S. 386, 396-97 (1989); <u>see</u> <u>also</u> <u>Fuentes v. Wagner</u>, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused . . . any such over-reaction would still fall short of

supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'").

Additionally, <u>de minimis</u> use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." <u>Brooks</u>, 204 F.3d at 107 (citing <u>Hudson</u>, 503 U.S. at 6); <u>see also Wilkins</u>, 559 U.S. 34 (2010) (clarifying that <u>de minimis</u> force, rather than <u>de minimis</u> injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Hudson</u>, 503 U.S. at 9.

The Court turns to its consideration of the <u>Whitley</u> factors to resolve the "core judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" in conjunction with Defendants' statement of material facts. <u>See id.</u> at 7.

With regard to the need for application of force, Defendants rely on the May 3, 2016 misconduct issued by Defendant Carter and the May 5, 2016 psychologist's note indicating that Plaintiff was to be escorted with a spit hood. (Doc. No. 43 ¶¶ 31, 85.) The May 3, 2016 misconduct provides that Plaintiff became aggressive with Defendants Carter and Chehovich and turned around and spit on Defendant Carter during the escort back to Plaintiff's cell from the library. (<u>Id.</u> ¶ 85.) It was only after Plaintiff became aggressive, turned around and spit on Defendant Carter, that Defendants used <u>de minimis</u> force by grabbing his arm to maintain security over Plaintiff. (Doc. No. 44 at 13.)

Plaintiff first contends that he did not spit on Defendant Carter and that security surveillance will confirm this assertion. (Doc. No. 47 at 10.) However, the discovery period has ended, Defendants have filed a motion for summary judgment with supporting documentation, and Plaintiff has not provided the Court with any such evidence. Moreover, Plaintiff contradicts this assertion by stating that he "only turned on and spit on Defendant Carter immediately after,

or in close proximaty [sic] to, Defendant Carter grabbing, pulling and twisting Plaintiff's testicle(s)." (<u>Id.</u> at 10-11.) Plaintiff's final argument is equally unavailing. Plaintiff argues that Defendants are aware that inmates in the "Behavior Modification Unit" are not "model prisoners" and therefore, "any officer who bids to work in the BMU should come to work understanding his character must be professional[ly] strong to deal with prisoners . . . in need of having their behavior 'modified.'" (Doc. No. 47 at 10.) Being placed in the BMU does not afford Plaintiff free reign or a license to spit on correctional officers. Therefore, in considering this first factor, the Court concludes that there was need for the application of force as a result of Plaintiff's aggressive behavior and turning and spitting on Defendant Carter. <u>See</u> <u>Hardwick v. Packer</u>, Civ. No. 12-1936, 2013 WL 4016495, at *14-15 (finding use of force in taking Plaintiff to the ground was not excessive when Plaintiff turned and spit at officer).

In considering the second factor, the Court looks at the relationship between the need and amount of the force used. In making this inquiry, the Court is reminded that the reasonableness of a particular use of force is often dependent upon the applicable factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396-97. Here, Defendants were confronted with Plaintiff, who acted aggressively and spit at one of the Defendants. (Doc. No. 43 ¶ 85.) Defendants' grabbing Plaintiff's arm to avoid being spit on was <u>de</u> <u>minimis</u>. Accordingly, the Court finds this factor weighs in favor of Defendants and that the <u>de</u> <u>minimis</u> force applied was proportionate to the need to restrain Plaintiff.

The Court next considers the extent of the injury inflicted. While significant or serious injury is not required to support an excessive force claim, <u>Hudson</u>, 503 U.S. at 4, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to

state a valid excessive force claim." Wilkins, 559 U.S. at 38 (citing Hudson, 503 U.S. at 9). Here, the documented injury from Plaintiff's excessive force claim of being thrown into his cell was an oval area with several dark spots on Plaintiff's inner midarm. (Doc. No. 43 ¶ 27.) No significant swelling was appreciated (id), and Plaintiff had full range of motion in his arm and was able to pull his shorts up and down without incident (Id. ¶ 22).

Upon review of Plaintiff's documented injury in the record, the Court concludes that the oval area with several dark spots on Plaintiff's inner midarm is de minimis in nature. Moreover, the records indicate that Plaintiff did not require any medical treatment to his midarm. See Luong v. Hatt, 979 F. Supp. 481, 485-86 (N.D. Tex. 1997) (finding that minor abrasions on the forearm and chest, a contusion with slight swelling of the jaw, a swollen wrist, cuts on the face and tongue, and a bloody nose were only de minimis injuries because they were the types of injuries that would not require "a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury"); Bynum v. Thiroway, Civ. No. 06-2272, 2008 WL 2704619, at *5 (M.D. Pa. July 7, 2008) (granting summary judgment in favor of Defendants on excessive force claim where Plaintiff suffered head laceration requiring only a small number of sutures). Thus, the Court finds that this factor militates in favor of entering judgment for Defendants, as no reasonable factfinder could conclude from Plaintiff's injury that malicious and sadistic force was used.

The fourth factor the Court must consider is the extent of the threat and safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them. Giles, 571 F.3d at 326. In this case, Defendants were confronted with Plaintiff, who behaved aggressively and spit at Defendant Carter during an escort back to his cell. (Doc. No. 43 ¶ 85.) Based on these facts, there was a reasonable perception of a threat to safety of staff and

inmates.  Indeed, it "certainly is unreasonable and would undermine institutional discipline to expect a corrections officer to simply allow himself to be spit upon."  Reyes v. Chinnici, 54 F. App'x 44, 47 (3d Cir. 2002) (quoting Reyes v. Chinnici, Civ. No. 98-6615 (E.D. Pa. Apr. 11, 2001)).  Accordingly, this factor also weighs in favor of granting summary judgment for Defendants.

The final factor that the Court considers is the effort made by Defendants to temper the severity of a forceful response.  However, in situations that require an immediate response, there is little to no time to attempt to negotiate or reason with a recalcitrant prisoner.  See Abdulla v. Hess, Civ. No. 15-924, 2016 WL 1023575, at *8 (M.D. Pa. Mar. 15, 2016) ("[A]s to whether an effort was made to temper [the correctional officer's] response, [plaintiff's] actions posed an immediate threat requiring an immediate response, and there was no time to attempt to negotiation or reason with [plaintiff].").  Therefore, this factor also weighs in favor of granting summary judgment in favor of Defendants.

In analyzing the five Whitley factors in relation to the facts surrounding the May 3, 2016 incident, the Court finds the evidence fails to support Plaintiff's claim of excessive use of force. When the Court considers the de minimis injury to Plaintiff, along with the additional evidence Defendants submitted, the Court concludes that no reasonable factfinder could conclude that the force used by Defendants toward Plaintiff was excessive.  As such, the evidence does not create a disputed issue of material fact with respect to Plaintiff's May 3, 2016 excessive force claim and summary judgment will be entered in favor of Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 42), will be granted.  An appropriate Order follows.